UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GREGORY JOSEPH LAZARD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-2860** |
| **MARLIN N. GUSMAN, MR. GIBSON, MS. WEAVER, BONITA J. PITTMAN, MS. FARE, MS. STEELE** | **SECTION "G"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C) and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On February 10, 2015, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for defendants participating by conference telephone call.[2] Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

**I.     Factual and Procedural Background**

   **A.     Original Complaint**

The plaintiff, Gregory Joseph Lazard ("Lazard"), an inmate housed in the Orleans Parish Prison system ("OPP"), filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, Orleans Parish Sheriff Marlin N. Gusman, Mr. Gibson, Ms. Weaver, Bonita J. Pittman, Ms. Fare, Ms. Steele, all officials at OPP. Lazard alleges that the prison officials

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges occurred and the legal basis for the claims. The information received is considered to an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 10. The plaintiff was sworn prior to testifying and the hearing was digitally recorded.

have ignored the living conditions at the jail and failed to "reinvigorate the condition of the population."

### B.     *Spears* **Hearing**

Lazard testified that the conditions about which he complains included rust in the showers and on the bed where he slept and peeling paint in the showers. He also indicated that, following his arrival in the jail on November 12, 2014, he was not provided with medication he claimed to have been taking prior to his arrest. Lazard also conceded to the Court that his memory about the dates and timing of his treatment may not be accurate and that he would have to consult his notes upon his return to his cell.

With that proviso, Lazard stated that it took about one month after his initial medical screening before he received medication for his diabetes, hypertension, and mental illness.[3] He stated that he filed numerous sick call requests and grievance complaints; yet, he was not seen by a nurse. He stated that, in the middle of December, he saw the nurse and was referred to the medical director. He recalled that it took about fifteen or sixteen days before the medical director and another official went to see him. He did begin receiving medication after that although it was not on a regular basis. He explained that, when he was transferred from Conchetta to another OPP facility, he had to request the medication again and it took about two weeks to start again.

Lazard further complained that his diabetes medication (insulin) was changed by the prison doctors from Lantus to Humulin, which caused him to have sugar spikes. He reported this by grievance complaint and did not see medical personnel for that complaint.

---

[3] He claimed that he suffers from post-traumatic stress disorder ("PTSD") and depression for which he was taking diazepam and tegretol.

2

Lazard also advised the Court that he brought suit against the Sheriff because he thought he had to sue him. He conceded that he never spoke to Sheriff Gusman and had no knowledge that Sheriff Gusman was aware of his complaints. Lazard further stated that the same was true of the other defendants, Gibson, Weaver, Pittman, Fare and Steele. They each held the rank of Sergeant or had some supervisory role at Conchetta, and he never spoken with or notified any of them about his complaints. He did not address any of his complaints to them and was unaware of who responded to his grievance complaint.

### C. Supplement to *Spears* Testimony

Lazard later supplemented his testimony with additional written statements, and the Court considers these to be an amendment to his complaint.[4] He clarified that, in addition to rust and peeling paint he mentioned, the conditions at Conchetta included dust in the vents and on the bars and ceiling. Water dripped from the showers which caused constant dampness and this caused mold and mildew on the ceilings. The facility was closed-in with not much circulation. He also complained that he lived with terminally ill patients.

He further alleges for the first time, that he filed a sick call complaint for a sore throat, stuffy nose and skin irritation on his back resulting apparently from the damp environment. He also alleges that his tuberculosis test was not conducted or recorded properly. He further complains that there is no regular review of the medical services to assure that it complies with the Constitution.

As clarification to his prior statements, he reiterated that, during the first two weeks of his confinement, he was without medication in spite of the fact that he gave the prison access to his medical records. He also requested medical assistance during that period to no avail. He indicates

---

[4]Rec. Doc. No. 12.

that he spoke to a nurse on December 1, 2014, about his medication and she indicated that she would have the supervisor visit him. He did not see the supervisor until December 16, 2014.

He claims that his family contacted Colonel Weaver's office to inquire about his medical care. After that, he was examined and his medical history was taken. He was given a diabetic diet although he believes it was not the correct diet. He also was not given Zantac and Tylenol like he had received prior to his incarceration or the foot cream he was supposed to get for athletes foot.

Lazard further writes that, on January 3, 2014, he was told that he had submitted too many grievance complaints and was given an appointment to see Dr. Holt on January 8, 2015. The appointment did not take place, because he was transferred from Conchetta to another OPP facility. He was eventually seen by Dr. Holt on February 10, 2015, but his records could not be located for the exam. Also, at the new facility, "detox inmates" are housed with chronically ill patients.

## II.     Standard of Review for Frivolousness

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such

as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**III.    Analysis**

    **A.    No Basis for Liability**

Lazard asserts that the conditions of his confinement at Conchetta were unsanitary, including mold, rust, and ventilation concerns, and that his medication and medical care were delayed. As outlined previously, Lazard named the defendants, Sheriff Gusman, Mr. Gibson, Ms. Weaver, Bonita J. Pittman, Ms. Fare, and Ms. Steele, because they were "in charge" of Conchetta, although he concedes that none of the defendants were personally involved in addressing his complaints and were not personally notified by him about his concerns.

To recover under § 1983, a plaintiff must identify both the constitutional violation and the responsible person acting under color of state law. *See Flagg Bros.*, *Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson,* 454 U.S. 312 (1981). Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to liability on a claim for damages under §1983. Thus, a supervisory official, like Sheriff Gusman and the other defendants, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* or simply because

an employee or subordinate allegedly violated the plaintiff's constitutional rights.  *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999);  *see also*, *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability.").  A defendant would be liable under § 1983 only if he or she were "personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation."  *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also*, *Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120, 123 (5th Cir. 1980).

In this case, Lazard concedes that the defendants were not personally involved in or knowledgeable of the conditions or his medical care.  In the one instance where he contends that his family contacted Sergeant Weaver's office, he did not indicate that anyone actually spoke to Sergeant Weaver.  Nevertheless, he concedes that after the phone call to that office, he began receiving medical attention and medication.  This would negate any inference that Weaver was intentionally indifferent to his needs, as will be further discussed in this report.

Lazard also has not alleged that he has suffered any injury directly resulting from any order, training, or other policy implemented by Sheriff Gusman or the ranking officers that would create a vicarious liability under § 1983.  *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988).

Lazard has not alleged a personal action or connection that would render Sheriff Gusman or any of the named defendants liable under § 1983 or liable for the actions or inactions of their subordinates at the jail.  For these reasons, Lazard's claims against the defendants as supervisory

officials over the prison are frivolous and otherwise fail to state a claim for which relief can be granted under § 1915, § 1915A, and § 1997e.

### B. Conditions of Confinement

Even if Lazard had identified a proper defendant, he has not alleged or established a constitutional violation resulting from the conditions in Conchetta in order to recover under § 1983.

The Eighth Amendment's prohibition on "cruel and unusual punishments" forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' ... or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976) (citations omitted). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

As discussed previously, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit*, 641 F.2d at 346. Furthermore, the official must have acted with deliberate indifference to a known risk of harm to be liable under § 1983. An official is deliberately indifferent to an inmate's health and safety in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of harm." *Thompson*, 245 F.3d at 459. The plaintiff must prove facts

sufficient to show "at a minimum, that the prison officials realized there was imminent danger and have refused--consciously refused, knowingly refused--to do anything about it." *Campbell v. Greer*, 831 F.2d 700, 702 (7th Cir. 1987). Applying these factors to the instant case, Lazard has not alleged a constitutional violation based on the conditions in Conchetta.

### 1. **Dust, Mold, Mildew and Lack of Circulation**

The conditions described by plaintiff, while plainly not comfortable or pleasant, do not rise to a level of seriousness to be considered a constitutional violation. The federal courts have long recognized that serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982). The Courts also have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." *Talib*, 138 F.3d at 215 (citing *Rhodes*, 452 U.S. at 349); *accord Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).

In keeping with this philosophy, the federal courts have recognized that certain institutional problems such as dust, mold, and stale air do not amount to a constitutional violation. *See*, *e.g.*, *White v. Gusman*, No. 14-2131, 2014 WL 6065617, at *1 (E.D. La. Nov. 12, 2014); *Harrison v. Cox*, No. 12-1813, 2013 WL 620799, at *5 (W.D. La. Jan.16, 2013), *adopted*, 2013 WL 622399, at *1 (W.D. La. Feb. 15, 2013); *Clark v. Gusman*, No. 11-2673, 2012 WL 1825306, at *5 (E.D. La. Mar. 29, 2012), *adopted*, 2012 WL 1825302, at *1 (E.D. La. May 18, 2012). To the extent Lazard asserts that these factors were present in Conchetta, he has not stated a constitutional violation.

Furthermore, even assuming that Lazard's stuffy nose, sore throat, and skin irritation were contracted in or associated with the conditions at Conchetta, he has not established that any of the defendants knew of a potential risk of serious harm to his person or intentionally ignored that risk.

8

To the extent prison officials were notified through a grievance complaints and sick call requests, Lazard's medical complaints were eventually addressed albeit it not as quickly as he would have liked. Furthermore, as resolved previously, Lazard concedes that the named defendants were aware of his living conditions or need for medical attention. Thus, even with the presence of mold and rust in the showers and area to which he was assigned, he has not stated a constitutional violation. *See McCarty v. McGee*, No. 06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation.").

Furthermore, the jurisprudence has repeatedly held that the presence of mold and dampness in a prison setting does not render an inmate's confinement unconstitutional. *See*, *e.g.*, *Eaton v. Magee*, No. 10-112, 2012 WL 2459398, at *5 (S.D. Miss. Jun. 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); *Barnett v. Shaw*, No. 11-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), *adopted*, 2011 WL 2214383, at *1 (N.D. Tex. Jun. 7, 2011); *Reynolds v. Newcomer*, No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (complaints of "the presence of black mold in living areas, eating areas, and shower areas" were found to "rise to no more than a *de minimis* level of imposition with which the Constitution is not concerned" (quotation marks omitted)).

Thus, Lazard's allegations about mold, leaking fixtures and dampness fail to establish constitutional violations. *See Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional

violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell); *Davis v. St. Charles Parish Corr. Ctr.*, No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (citing *Talib*, 138 F.3d at 215). "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional." *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim.). As one federal appellate court has concluded, "[l]leaky toilets and puddles are unpleasant but not unconstitutional." *Smith v. Melvin*, No. 95-2531, 1996 WL 467658, at *2 (7th Cir. Jul. 26, 1996); *accord Davis*, 2010 WL 890980, at *9; *Wilkerson v. Champagne*, No. 03-1754, 2003 WL 22872106, at *3 (E.D. La. Nov. 28, 2003).

For the foregoing reasons, Lazard's claims are frivolous and otherwise failed to present a claim for which relief can be granted. The claims should be dismissed for this reason under § 1915, § 1915A, and § 1997e.

### 2. <u>Adequate Medical Care</u>

Lazard also alleges that he did not receive his diabetes, hypertension, and mental health medications in a timely and consistent manner. As a supplemental claim, he also implies that the conditions at Conchetta caused him to have a stuffy nose, sore throat, and skin irritation.

Claims of deliberate indifference by prison personnel to a prisoner's serious medical needs is actionable under § 1983. *Estelle*, 429 U.S. at 104-105. "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Lewis*

*v. Evans*, 40 F. App'x 263, 264 (5th Cir. 2011). As noted above, a prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Farmer*, 511 U.S. at 847; *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir.2004) (the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. La Porte County Sheriff's Dep't*, 306 F.3d 515 (7th Cir. 2002) (same).

Under *Estelle*, deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104. This is true where the indifference is manifested by prison officials or prison healthcare providers in their response to the prisoner's needs or in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.* Thus, in order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.*

However, a prisoner's mere disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Gobert*, 463 F.3d at 346; *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates, at a certain point, may rise to the level of a constitutional violation, while malpractice or negligent care does not. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving

or failing to supply medical treatment would not support an action under Section 1983."); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). Rather, a plaintiff must show that defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

In this case, while Lazard complains about the delay and standards of the medical care received, he does not allege an indifference to his needs that exceeded these constitutional boundaries. As noted above, even when his family allegedly contacted Sergeant Weaver's office about his medical needs, he concedes that he thereafter began receiving attention and medication.

In fact, Lazard all but concedes that all of his complaints ultimately were not ignored and instead were met with examination and medication, although different from the medication he had before his incarceration. The delays of which he complains were no longer than the typical delay associated with obtaining a doctor's visit in a civilian setting and are not alleged to have caused him any harm. *See Iruegas v. Poe*, 374 F. App'x 513, 517 (5th Cir. 2010) (delay in providing prisoner medical care not a constitutional violation where prisoner could not show any harm based on the delay); *Mendoza*, 989 F.2d at 195.

Furthermore, his disagreement with medical treatment and medication prescribed also fails to reach the level of a constitutional violation. *See*, *e.g.*, *Domino*, 239 F.3d at 756. A healthcare provider's decision to provide additional or different treatment and which medications to prescribe is a matter of medical judgment that is not, without more, to be second-guessed by a court. *See Gobert*, 463 F.3d at 346.

For the foregoing reasons, Lazard's medical indifference claims are frivolous and otherwise fail to state a claim for which relief can be granted under § 1915, § 1915A, and § 1997e.

## V.     Recommendation

It is therefore **RECOMMENDED** that Lazard's § 1983 claims against the defendants, Sheriff Gusman, Mr. Gibson, Ms. Weaver, Ms. Pittman, Ms. Fare, Ms. Steele be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted under 28 U.S.C. § 1915, § 1915A, and 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[5]

New Orleans, Louisiana, this 30th day of November, 2015.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[5] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.